IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

ELVA WHITEN,                          *
                                      *
              Plaintiff,              *
                                      *
vs.                                   *        No. 5:07CV00026 SWW
                                      *
STUTTGART REGIONAL MEDICAL            *
CENTER,                               *
              Defendant.              *

### Memorandum Opinion and Order

Elva Whiten ("Whiten") brings this suit against the Stuttgart Regional Medical Center ("SRMC") alleging discrimination on the basis of race, age, and disability as well as retaliation. Before the Court is a motion for summary judgment filed by defendant. Plaintiff responded to the motion, defendant replied to the response, and plaintiff responded to defendant's reply. After careful review of the motion, responses, reply, briefs, statements of facts, and exhibits, the Court finds the motion should be granted.

### Background

Whiten is a black female who is over the age of forty. She was employed as a certified nursing assistant ("CNA") on the night shift on West Station at SRMC beginning in 2001.[1] She was terminated on July 28, 2006. Ruth Ann Blankenship was the West Station Nurse Manager; Blankenship's supervisor was Cindy Crum, the Chief Nursing Officer for SRMC. In mid-2005,

---

[1]The West Station is the SRMC's medical and surgery ward and the only ward on which CNAs are employed. *See* Def's. Mot. Summ. J., Ex. 3 at ¶ 3.

SRMC began using a new computer system.  *See* Def's. Mot. Summ. J., Ex. 1 (Blankenship Aff.) at ¶ 3.  Every employee, including Whiten, received training on the new system, and anyone who had problems had one-on-one training with the computer company's staff.  The SRMC also had "superusers" who were available 24 hours a day to help anyone with the computer system.  *Id.*  In July 2005, all West Station CNAs were required to attend a meeting during which documentation, bed positioning, accountability, environmental rounds, and courtesy were discussed.  Ex. 1 to Blankenship Aff.

In August 2005, after receiving complaints about the West Station staff, Crum and Blankenship began doing chart audits.  Blankenship Aff. at ¶ 6  These audits uncovered documentation errors being made by staff, including Whiten, when inputting the information into the SRMC's computer system. Defendant claims that from August 2005 through September 2005, Blankenship counseled Whiten on six different occasions regarding such issues as patient complaints, failure to provide ice, and incorrect charting of patients' pulse rates and weights.  In October 2005, after attending a mandatory staff meeting, Blankenship says she counseled Whiten about incorrect charting after a doctor complained to Blankenship about incorrect documentation of the liquid input and urine output on a patient.  In January 2006, Whiten received at least one written warning due to incorrect documentation.  She and the night staff were also counseled regarding a patient who complained that a call he made during the night shift was not answered until the next morning.  Whiten says she was not working the night the incident occurred.

On May 11, 2006, Blankenship gave Whiten a written warning for incorrect documentation and failure to provide admission kits and ice.  Blankenship states that later that month, Shelia

Stephens, a West Station staff member, complained that Whiten and another staff person were sleeping on the job, and at a June 2006 medical staff review council meeting, the medical staff made complaints about the CNAs in general. *Id.* at ¶ 8. According to Blankenship, at a medical staff meeting in July 2006, doctors complained about CNA care on West Station, and the complaints focused on Whiten's shift. *Id.* Blankenship says she met with Whiten on July 21, 2006, and told her that if things did not get better, termination would result. Ex. 16 to Blankenship Aff.

On May 12, 2006, a member of a patient's family complained to Shawn Carter, a nurse on the day shift, that the night staff aides had been rude to his father, telling him to use his urinal rather than escorting him to the bathroom as ordered by the patient's doctor. Ex. 17 to Blankenship Aff. Whiten was one of the aides on duty that night. *Id.* Blankenship said she spoke to Whiten about the incident, and that Whiten denied being rude but did not deny offering the patient a urinal. Blankenship Aff. at ¶ 9; Crum Aff. at ¶ 6. On July 26, 2006, the SRMC's Patient Grievance Committee met and discussed the formal written complaint filed by the patient's family and the investigation of that complaint. John Neal, SRMC's CEO at the time, and Crum were in attendance. Crum terminated Whiten effective July 28, 2006, for "negligent acts which harm or could harm patients" and "discourtesy toward patients." Blankenship Aff., Ex. 18; Crum Aff. at ¶ 7.

Whiten filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), and on or about November 9, 2006, she received a Dismissal and Notice of Rights from the EEOC. She filed a lawsuit in this Court on February 7, 2007.

Whiten alleges discrimination based on race and retaliation for filing the EEOC complaint under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § § 2000e *et seq.*, under 42

U.S.C. § § 1981 and 1983, and under the Arkansas Civil Rights Act of 1993; age discrimination under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*; disability discrimination under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § § 12101 *et seq.*; and violation of the Equal Pay Act of 1963 ("EPA"), 29 U.S.C. § 206(d).  She also asserts a state law clam of outrage.

Defendant moves for summary judgment, arguing Whiten cannot establish she is disabled for purposes of the ADA, cannot establish a *prima facie* case for any claim, and cannot establish SRMC's reasons for terminating her employment were a pretext for intentional age, race or disability discrimination.

## Standard of Review

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).  As a prerequisite to summary judgment, a moving party must demonstrate "an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986).  Once the moving party has properly supported its motion for summary judgment, the non-moving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).  The non-moving party may not rest on mere allegations or denials of her pleading but must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 587 (quoting Fed.R.Civ.P. 56(e)).

"[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.,* 49 F.3d 399, 401 (8th Cir. 1995). The inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Matsushita,* 475 U.S. at 587 (citations omitted). Summary judgment should be cautiously granted in discrimination cases because such cases often depend on inferences rather than on direct evidence. *Crawford v. Runyon,* 37 F.3d 1338, 1341 (8th Cir. 1994). Further, summary judgment is particularly appropriate where an unresolved issue is primarily legal, rather than factual. *Mansker v. TMG Life Ins. Co.,* 54 F.3d 1322, 1326 (8th Cir. 1995).

<b>Discussion</b>

Whiten alleges she was terminated because of race, age, and disability in violation of Title VII, the ADA, and the ADEA. She also claims she was denied equal pay because of her race and that she was denied her earned annual leave pay in retaliation for filing an EEOC complaint.

**1.      Disability Discrimination Claim**

Whiten testified she is disabled due to having arthritis in her left knee, *see* Def's. Mot. Summ.J., Ex. 4 (Whiten Dep.) at 61, 65, and claims she was wrongfully discharged from her position as a CNA in violation of her rights under the Americans with Disabilities Act. Am. Compl. at ¶ 27. Defendant asserts it is entitled to summary judgment because Whiten cannot establish a *prima facie* case of disability discrimination or that her termination occurred under circumstances leading to an inference of disability discrimination.

To establish a *prima facie* case of disability discrimination, a plaintiff must show that (1) she had a "disability" within the meaning of the ADA, (2) she was qualified to perform the essential functions of her job, with or without reasonable accommodation, and (3) she suffered an adverse employment action because of her disability. *Taylor v. Nimrock's Oil Co.,* 214 F3d 957 (8th Cir. 2000). "Not every physical or mental impairment 'counts' for ADA purposes, because most disabilities from which people suffer (bad vision, impaired hearing, arthritic joints, diabetes) do not have a substantial enough effect on their major life activities." *Berg v. Norand Corp.,* 169 F.3d 1140, 1145 (8th Cir. 1999)(internal quotation omitted). A person is not substantially limited in the major activity of working by virtue of being limited to a forty-hour work week. *Id.*

Whiten contends there is a genuine issue of fact in dispute as to her claim of disability discrimination. She points to medical evidence that shows she complained of hurting her knee in 1997, and in 1998 she underwent an arthroscopy. Pl's. Ex. List, Ex. 16 (Medical Records). The record also reflects that plaintiff went to a doctor on November 10, 2005, who diagnosed her with arthritis in her knee and released to her work, with the restriction that she not work more than an 8-hour shift. *Id.*. Ex. 17 (Ret. to Work Note). According to Katrina Murry, a charge nurse on the night shift, Blankenship was aware that Whiten had problems with her knee. *Id.*. Ex. 3 (Murry Aff.) at ¶¶ 2, 9.

In *Gretillat v. Care Initiatives,* 481 F.3d 649 (8th Cir. 2007), the plaintiff had knee-replacement surgery and was released to return to her job in the kitchen of a nursing home. She said that after working for three and one-half hours of a four-hour shift, she was "unable to walk, was limping, and was experiencing a good deal of pain." *Id.* at 651. Because she was unable to perform

the physical activities associated with her job, she was allowed to resign.  The court concluded that the plaintiff's limitations on walking, standing, and working were not substantial enough to be considered disabling.  *Id.* at 653-54, n.5.

Whiten said she worked eight-hour shifts, five days a week at SRMC.  Def's. Mot. Summ. J., Ex. 4 (Whiten Dep) at 10-12.  Whiten said that depending on the level of care needed by her patients on any given night, she might be on her feet a lot.  *Id.* at 52. She testified that while employed at SRMC, she exercised some mornings by walking, *id.* at 65-6, and that her knee did not bother her on a daily basis.  *Id.* at 64.  Her knee has not kept her from driving, and she does not use a cane.  *Id.* at 67.  While she was working at SRMC, she was also working up to thirty hours per week at the Area Agency on Aging, *id.* at 15, where she did such things as bathing patients, dusting, and washing dishes.  *Id.* at 54-56.  Whiten sought to increase her work hours at the Area Agency on Aging after she left the SRMC in July 2006.  *Id.* at 19-21.  She said she also found a new job at Crestwood Retirement in August 2006 and worked there for a few months before she quit.  *Id.* at 26. She also found a job sitting for a private individual.  *Id.* at 22-23.

The Court finds there is no evidence from which a reasonable jury could find Whiten is disabled, or that she was terminated because of a disability.

**2.      Age Discrimination Claim**

Plaintiff asserts she was discharged because of her age.  This claim is based on her assertion that SRMC only terminated the older CNAs, and that she was replaced by a woman who was thirty-two years old.

Because she does not have direct evidence of age discrimination, Whiten must rely on the *McDonnell Douglas* framework and first establish a *prima facie* case of discrimination.  She must show she (1) belonged to the protected class, i.e., was at least 40 years old; (2) was qualified to perform her job; (3) was terminated; and (4) was replaced by another person sufficiently younger to permit the inference of age discrimination. *McGinnis v. Union Pacific R.R.,* 496 F.3d 868, 875 (8th Cir. 2007)(internal quotation and citation omitted).  The establishment of a *prima facie* case creates a presumption of unlawful discrimination, which in turn requires a defendant to come forward with evidence of a legitimate, nondiscriminatory reason for the defendant's actions.  If the defendant articulates such a reason, the burden returns to the plaintiff to show the defendant's proffered reason is pretextual. *Id.*

Assuming Whiten established a *prima facie* case of age discrimination, the Court finds her age discrimination claim fails because Whiten has not offered any evidence indicating the reasons SRMC proffered for terminating her were pretextual and that age was the real reason for her termination.

The evidence is undisputed that Whiten had performance problems, documented by reports of verbal counselings and written warnings.  Whiten denies she was verbally warned between August 9 and September 29, 2005.  The record reflects that on September 15, 2005, Whiten signed a report prepared by Blankenship in which Blankenship noted Whiten had charted a patient's weight incorrectly.  *See* Def's. Mot. Summ. J., Blankenship Aff., Ex. 6.  The record also reflects Blankenship counseled Whiten on August 9, 2005, regarding the entry of an incorrect heart rate, *id.*, Ex. 2, and on August 23, 2005, regarding a patient's family complaining about rudeness and poor staff attitude.

*Id.*, Ex. 3.  Whiten denies receiving a verbal warning on October 16, 2005, but the record shows that a report of a verbal warning regarding incorrect charting of a patient's urine output was signed by Whiten.  *Id.*, Ex. 9.  Whiten says she received no written or verbal warning on January 9, 2006, concerning lack of documentation or incorrect documentation.  However, the record shows she signed a written warning addressing incorrect documentation or lack of documentation.  *Id.*, Ex. 11.  The record also reflects Whiten signed a written warning dated May 11, 2006, for poor job performance involving incorrect documentation of weights and failure to provide patients with admission kits and ice.  The written warning stated: "Continued failure to provide correct weights and failure to provide care will result in suspension and/or termination."  *Id.*, Ex. 15.[2]

Whiten does not deny that a patient's family complained about staff being rude to the patient and the patient being given a urinal rather than being escorted to the bathroom as directed by his doctor.  She denies being rude to the patient but does not deny that she offered the patient a urinal.  According to the defendant, this last incident regarding the patient complaint led to the termination of Whiten and Mary Avery, the other CNA involved in the patient complaint.

The Court finds Whiten has come forward with no credible evidence from which a reasonable jury could find that SRMC's reasons for terminating Whiten were a pretext for age discrimination.

**3.       Race Discrimination Claim**

---

[2]Whiten says documentation provided in discovery is inaccurate and has been altered to justify her termination.  Pl's Rule 56 Statement of Facts, ¶ 17.  She also claims that the new patient beds purchased by SRMC gave incorrect readings, and the inaccurate bed scale readings were not the result of operator error.  SRMC says it checked every bed in October 2006, after Whiten's termination, and found only one that was calibrated incorrectly, and it was not on West Station.  *See.* Def's. Mot. Summ. J., Ex.1 (Blankenship Aff.) at ¶ ¶ 11-12.

Whiten alleges she was terminated because she is black.   In the absence of direct evidence, a plaintiff asserting a claim of race discrimination under Title VII[3] has the initial burden of establishing a *prima facie* case.  "A plaintiff establishes a prima facie case by showing that: (1) she was a member of a protected class; (2) she was meeting the employer's legitimate job expectations; (3) she suffered an adverse employment action; and (4) similarly situated employees outside the protected class were treated differently." *Twymon v. Wells Fargo & Co.,* 462 F.3d 925, 934 (8th Cir. 2006).

Whiten asserts that a white CNA, Shelly Meins-Holland, was similarly situated and was treated differently.  Whiten claims Meins-Holland had three written and signed reprimands in her file yet was not terminated.  She also claims Meins-Holland cursed in front of patients, and submits the affidavit of Bonnie Statewright, who says Blankenship "brushed off" Meins-Holland's cursing and did not discipline her.  Pl's. Ex. List, Ex. 1 at ¶ 10.  The record reflects that Meins-Holland had three written reprimands in December 2001, *id.*, Exs. 18-20, and resigned in August 2006 because she wanted to transfer to the day shift.  *Id.*, Ex. 21. There is no record of any disciplinaries since December 2001, or that Meins-Holland was the subject of a patient complaint. *See Cherry v. Ritenour Sch. Dist.,* 361 F.3d 474, 479 (8th Cir. 2004)(test to determine whether employees similarly situated is rigorous; individual used for comparison must have engaged in same conduct without any

---

[3]The framework for analyzing a race discrimination claim brought pursuant to 42 U.S.C. § 1981 is the same as that used for one brought pursuant to Title VII.  *See Reedy v. Quebecor Printing Eagle, Inc.,* 333 F.3d 906, 907 (8th Cir. 2003); *McDonnell Douglas* framework also applies to purposeful employment discrimination on the basis of race under 42 U.S.C. § 1983 and to claims premised under the Arkansas Civil Rights Act.  *See Henderson v. Simmons Foods, Inc.,* 217 F.3d 612, 615 n.3 (8th Cir. 2000).; *Kim v. Nash Finch Co.,* 123 F.3d 1046, 1056 (8th Cir. 1997).

mitigating or distinguishing circumstances).[4] The Court finds Whiten fails to establish that Meins-Holland was similarly situated in all respects.

Even assuming Whiten established a *prima facie* case, she has not offered any evidence indicating the reasons SRMC proffered for terminating her were pretextual.  Whiten submits affidavits of several former employees who say that the May 12, 2006, incident regarding the patient complaint never happened and that there was no investigation.  *See* Pl's. Ex. List, Ex. 1 (Statewright Aff.) at ¶ 14; Ex. 3 (Murry Aff.) at ¶ 19; and Ex. 4 (Avery Aff.) at ¶ 14.  Whiten, however, does not deny the complaint was filed, and the record reflects that an investigation was performed, and that Whiten and Avery were the CNAs in the patient's room the night of the incident.  Both Whiten and Avery were fired.  Statewright, a black CNA, and Mae Caples, a white CNA, were terminated at the same time because they both had a history of errors with computer documentation.  *See id.,* Ex.7 (Crum Dep.) at 38-39.[5]

"Title VII prohibits intentional discrimination based on certain, discreet classifications; it does not prohibit employment decisions based on other factors, such as job performance, erroneous evaluations, personality conflicts, or even unsound business practices." *Rose-Matson v. NME Hosp., Inc.,*133 F.3d 1104, 1109 (8th Cir. 1998).  A plaintiff  "must do more than simply discredit an employer's nondiscriminatory explanation; [s]he must also present evidence capable of proving that

---

[4]Whiten also complains that her requests for leave were trumped by Meins-Holland's requests for leave.  Whiten testified that she was told that the person requesting leave first was granted leave.  Whiten, however, presents no evidence of specific dates when her request or requests for leave were denied.  *See* Whiten Dep., (Ex. 4, Def's. Mot. Summ.J. at 80-82.

[5]Statewright says she was fired after a false report was made that she was discourteous to a patient and failed to document patient care. Pl's. Ex. List, Ex. 1 at ¶ 16.

the real reason for [her] termination was discrimination based on [race]." *Nelson v. Boatmen's Bancshares, Inc.,* 26 F.3d 796, 801 (8th Cir. 1994). To survive a motion for summary judgment, the nonmoving party must "substantiate [her] allegations with sufficient probative evidence [that] would permit a finding in [her] favor based on more than mere speculation, conjecture, or fantasy." *Wilson v. Int'l Bus. Machs. Corp.,* 62 F.3d 237, 241 (8th Cir.1995) (internal quotation omitted).

There is no evidence from which a reasonable jury could find that SRMC fired Whiten because she is black. Whiten does not contest that she received a number of verbal and written warnings between August 2005 and May 2006, and that there were a number of staff complaints about the CNAs in general, and Whiten in particular. The Court finds defendant's motion for summary judgment on Whiten's claim of race discrimination should be granted.

**4.        Equal Pay and Retaliation Claims**

Whiten claims defendant paid her at a lower rate of pay than white employees who had the same job description. Am. Compl. at ¶ 30. She also alleges defendant withheld her retirement funds because she filed an EEOC complaint. *Id.* at ¶ 32.

The evidence is undisputed that at the time of her termination, Whiten was the fifth highest paid CNA out of ten. Of the five highest paid CNAs, only one was white, and she had more seniority than Whiten. *See* Def's. Mot. Summ. J., Ex. 5 (Sims Aff.) at ¶ ¶ 3 and 4. Whiten admitted at her deposition that she had misplaced her retirement forms and thus had failed to submit a claim for retirement benefits. *See* Def's. Mot. Summ. J., Ex. 4 (Whiten Dep.) at 115-16.[6]

---

[6]The evidence is also undisputed that only employees who resign with sufficient notice or who are not terminated for cause are entitled to Paid Time Off. *See* Def's. Mot. Summ. J., Ex. 8.

**5.      State Law Claim of Outrage**

In *Adair v. Burgett,* 210 F.3d 378, 2000 WL 485256 (8th Cir. 2000) (unpublished per curiam), a case which originated in this Court, the Eighth Circuit affirmed the grant of summary judgment on the plaintiff's constitutional claims.  With regard to the state claim, however, the Eighth Circuit, quoting *Birchem v. Knights of Columbus,* 116 F.3d 310, 314 (8th Cir. 1997), stated that "'when federal and state claims are joined and the federal claims are dismissed on a motion for summary judgment, the pendent state law claims are dismissed without prejudice to avoid [n]eedless decisions of state law . . . as a matter of comity . . .'" *Adair, supra.*

Although § 1367 and *Birchem* appear to confer discretion on the Court to retain jurisdiction of Whiten's state law claim, the language of *Adair* is unequivocal.  Accordingly, based on *Adair,* the Court finds that Whiten state law claim of outrage should be dismissed without prejudice.

**Conclusion**

IT IS THEREFORE ORDERED that the motion for summary judgment[7] is granted.  Plaintiff's state law claim of outrage is dismissed without prejudice.  Her remaining claims are dismissed with prejudice.   Judgment will be entered for defendant.

DATED this 28th day of January 2008.

/s/Susan Webber Wright

UNITED STATES DISTRICT JUDGE

---

[7]Docket entry 28.

13